
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NABIL H. AZIZ** | § | Case No. 12-42452 |
| xxx-xx-4286 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |
| EVA RHODES and | § | |
| RONALD E. RHODES | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 12-4185 |
| | § | |
| NABIL H. AZIZ | § | |
| | § | |
| | § | |
| Defendant | § | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiffs, Eva Rhodes and Ronald E. Rhodes, seeking a determination of whether an alleged debt owed to it by the Defendant-Debtor, Nabil H. Aziz ("Defendant"), is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiffs contend that the debt is non-dischargeable as a debt obtained by false representations, false pretenses or actual fraud pursuant to 11 U.S.C. §523(a)(2)(A). No other grounds was asserted in the complaint.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

## FINDINGS OF FACT

1. The Defendant, Nabil H. Aziz, posted a newspaper advertisement in May 2006 to sell a 2005 6-cylinder Ford Mustang automobile with 9,000 miles.[2]

2. The Defendant admitted that he represented in the newspaper advertisement that only one person had owned the vehicle.

3. Upon contacting the Defendant, the Plaintiffs met with the Defendant at his home in Frisco.

4. Upon the Plaintiffs' expression of their willingness to purchase the car for $17,500, the Defendant represented to the Plaintiffs that the vehicle was financed and that he needed a brief opportunity to satisfy the existing indebtedness on the vehicle so that he could convey clear title to the Plaintiffs.[3]

5. The Plaintiffs paid a $500 deposit to the Defendant at that first meeting.

6. A few days later, the Plaintiffs met the Defendant at an agreed location in northeast Dallas and consummated the purchase of the vehicle.

7. In light of the previous deposit, the Plaintiffs tendered a cashier's check for $17,000 to the Defendant, for the total purchase price of $17,500.00 which was appropriated by the Defendant.[4]

8. In exchange for the cashier's check, the Defendant tendered possession of the vehicle, the keys to the vehicle, and an envelope that the Defendant represented

---

[2] Ex. 4. Stipulated fact from Art. III ¶ 10 on p. 3 of PTO. This is the first of several factual stipulations by the parties that were set forth in the approved Joint Pre-Trial Order ("PTO") entered in this adversary proceeding on October 15, 2013.

[3] Though its significance is unclear, this was also a misrepresentation since the Defendant testified that he had the title in his possession at his home during the initial meeting. Further, the delivered title contained no notation of a lien.

[4] Stipulated fact — Art. III ¶ 9.

contained the title to the vehicle.

9. The Defendant immediately departed with the cashier's check.

10. Upon inspection of the title to the vehicle that had been tendered to them, the Plaintiffs discovered that the vehicle was actually titled in the name of another individual, Assem Aicha.[5]

11. The certificate of title further revealed that the previous owner (prior to Aicha) was "Reemco Import Inc., Dallas, TX"— not the Defendant.[6]

12. The vehicle contained a verification of insurance card that listed yet another purported owner.

13. The certificate of title further failed to reflect that any lien had ever existed against the vehicle.

14. The Plaintiffs' attempts to stop payment on both checks to the Defendant were unsuccessful.

15. On the next business day, the Defendant immediately negotiated the cashier's check and obtained the issuance of a new cashier's check made payable to Foreign Motors Corporation, a company owned by the Defendant's son and for whom the Defendant worked.

16. The Plaintiffs attempted to rescind the transaction, but the parties could not agree upon the terms of such a rescission.

17. A month later, the Plaintiffs had to rescind a sale of the vehicle to a third party when an inspection by a certified mechanic revealed that the vehicle had been involved in a prior accident and had significant frame damage.[7]

18. In 2007, the Plaintiffs initiated litigation against the Defendant in the County Court at Law #5 in and for Dallas County, Texas under case no. CC-07-01252-E and styled *Eva Rhodes and Ronald E. Rhodes v. Nabil Aziz* (the "State Court Litigation").

---

[5] Ex. 6. See also stipulated fact — Art. III ¶ 12.

[6] Stipulated fact — Art. III ¶ 13.

[7] Ex. 7.

19. The state court petition filed by the Plaintiffs sought recovery of compensatory damages for deception trade practices and common law fraud, and further sought the imposition of exemplary damages and an award of attorney's fees.[8]

20. "[A]lthough duly cited to appear and answer herein," the Defendant failed to file an answer or otherwise appear in the State Court Litigation.[9]

21. On June 4, 2008, a "Default Judgment" (the "State Court Judgment") was entered in the State Court Litigation in favor of the Plaintiffs and against the Defendant in the amount of $53,700.00, plus $5,000.00 in a contingent award of attorney's fees, $261.00 for costs of court, together with post-judgment interest at the rate of 5% per annum until paid.[10]

22. The Plaintiffs failed to tender any specific factual findings made in the State Court Litigation.

23. The Plaintiffs failed to tender the record of the state court proceeding from which the specific factual findings might otherwise have been discerned.

24. The Plaintiffs are the current owners and holders of the State Court Judgment.[11]

25. At some point after the entry of the State Court Judgment, the Plaintiffs ultimately sold the damaged vehicle at auction for net proceeds in the approximate amount of $6,600.00.

26. The Debtor-Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 5, 2012.

27. The claim of the Plaintiffs was properly scheduled as an unsecured claim in the Defendant's bankruptcy case.[12]

---

[8] See ¶ 5 of Defendant's Original Answer.

[9] Ex. 1.

[10] *Id*. See also stipulated facts — Art. III ¶ 8 & 11.

[11] *Id*.

[12] Schedule F filed by the Debtors on September 5, 2012 [dkt #1] in case no. 12-42452.

28. On December 3, 2012, the Plaintiffs filed their original complaint in this adversary proceeding, seeking a determination that the debt owed to them is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

29. The Defendant represented to the Plaintiffs at their initial meeting that he was the sole owner of the vehicle.

30. The Defendant represented to the Plaintiffs that he had been the sole owner of the vehicle during its existence, having purchased it as a new vehicle from Westway Ford.

31. The Defendant represented to the Plaintiffs that, during his sole ownership, the vehicle had never been involved in an accident.

32. The Defendant knew that the foregoing representations to the Plaintiffs were false when they were made.

33. The Defendant made the foregoing false representations to the Plaintiffs with the intention of deceiving them.

34. In the absence of the false representations by the Defendant, the Plaintiffs would not have purchased the vehicle from the Defendant.

35. In the absence of the false representations by the Defendant, the Plaintiffs would not have tendered $17,500.00 to the Defendant.

36. The Plaintiffs thus actually and justifiably relied upon the false representations of the Defendant.

37. The Plaintiffs suffered financial losses as a direct and proximate cause of that reliance, in the amount of $53,961.00, as reflected in the State Court Judgment.[13]

38. The Plaintiffs did not offer any evidence to demonstrate the reasonable and necessary nature of any additional attorney's fees incurred in this adversary proceeding.

---

[13] The Court has omitted from the damage calculation the contingent award of attorney's fees set forth in ¶ 3 of the State Court Judgment since the Defendant is admittedly entitled to the remittitur expressed therein. See Ex. 1. The Defendant is otherwise bound by the liquidated amount of the debt found to have arisen by his deceptive trade practices and/or his fraud as established by the award of damages expressed in the State Court Judgment.

39. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. In seeking to except the debt owed to them from the scope of the Debtor-Defendant's discharge, the Plaintiffs assume the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4. All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[14] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

5. However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

*Nondischargeability Under 523(a)(2)(A):*
*Debt Arising by Fraud, False Pretenses, or False Representation*

6. The Plaintiffs' Complaint seeks a determination that the debt owed to them should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

---

[14] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

7.     11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

8.     Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[15] the Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

9.     The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event as opposed to a representation regarding a past or existing fact. *Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) ["In order . . . to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise ... related to [a] future action [which does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense"].[16]

10.     Since the representations made by the Defendant in this case pertained to an

---

[15] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[16] Though some in this circuit have rejected these parallel tests as a distinction without a difference and proceeded with a unitary approach to the problem, *see In re Melancon*, 223 B.R. 300, 308 (Bankr. M.D. La. 1998), this Court feels compelled to recognize and attempt to apply the distinction drawn by the circuit court.

existing fact [i.e. the facts regarding the automobile], the Plaintiffs' non-dischargeability action is properly characterized as one based upon false representation or false pretenses.

11. While "false pretenses" and a "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).

12. "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (E.D. Tex., Dec. 19, 2011) (*citing RecoverEdge,* 44 F.3d at 1293).[17]

13. The Fifth Circuit has stated that an intentional and purposeful deception constitutes a "knowing and fraudulent falsehood." *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483-84 (5th Cir. 1992).

14. The degree of reliance required under §523(a)(2)(A) is justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995). Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent. "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (*citing Field v. Mans*, 516 U.S. at 71).

---

[17] A debt may also be declared non-dischargeable if it was obtained by actual fraud. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

15. Accordingly, a debt arising from a transaction in which false statements regarding the current title, ownership history, or condition of an automobile are utilized to induce a purchase of that automobile may be excepted from discharge under §523(a)(2)(A) as a false representation. *Whited v. Galindo (In re Galindo)*, 467 B.R. 201, 208 (Bankr. S.D. Cal. 2012), *aff'd,* 2013 WL 3389556 (B.A.P. 9th Cir. July 8, 2013); *Lykins v. Teta (In re Teta)*, 2011 WL 2435948 at *9 (Bankr. D. Colo. June 16, 2011); *Rasnick v. Carpenter (In re Carpenter),* 17 B.R. 563, 564 (Bankr. E.D. Tenn. 1982).

16. Thus, the debt owed by the Defendant to the Plaintiffs, as established by the judgment arising from the State Court Litigation, including all post-judgment interest, but excluding the remitted award of attorney's fees and applying all proper credits including the $6,600 recovered by the Plaintiffs from the sale of the vehicle, is therefore excepted from discharge as a debt obtained by false representations pursuant to 11 U.S.C. §523(a)(2(A).

17. Court costs of $293.00 are awarded to the Plaintiffs to be paid by the Defendant.

18. All other relief requested in the Plaintiffs' Complaint in the above-referenced adversary proceeding shall be denied.

19. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

20. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 10/24/2013

*Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE